UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION at LAFAYETTE

| | |
|---|---|
| ALEXANDRA HUSTEDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:21CV59-PPS/JEM |
| ) | |
| HUNTER WARFIELD, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Alexandra Hustedt alleges that Hunter Warfield, Inc., a large debt collection agency, attempted to collect a debt owed to Granite Management for damage to an apartment Hustedt lived in while a student at Purdue University. [DE 26 at ¶¶8 & 9.[1]] Hustedt alleges that she sent HW a letter disputing the debt, but that even after receiving it, HW continued to attempt to collect the debt from Hustedt. [DE 26 at ¶¶40-41.[2]] HW's alleged conduct included "reporting the subject account to consumer reporting agencies with a balance owed," which "HW knew or should have known to be false." [DE 26 at ¶43, ¶¶46-48.] According to Hustedt, she "never owed anything to HW or Granite Management LLC...at any time HW furnished information concerning Ms. Hustedt to any credit reporting agency." [DE 26 at ¶60.]

---

[1] In ¶9, the Second Amended Complaint refers to "Mai," but from the context I construe that as an intended reference to Hustedt.

[2] In ¶40, Hustedt appears to have erroneously swapped references to "HW" and "Plaintiff."

Hustedt's Amended Complaint filed in the Circuit Court of Tippecanoe County alleged that HW violated the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*, and the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et seq*. [DE 5 at ¶3.] HW removed the case to federal court based on the Amended Complaint's invocation of the two federal statutes. [DE 1 at ¶3.] Since the removal, plaintiff has amended her complaint a second time. [DE 26.] She now brings an amended motion to remand arguing that HW cannot demonstrate that she has alleged a concrete harm brought upon her, which is a threshold requirement of Article III standing. [DE 29 at 1.] If all of this seems a little odd, that's because it is. Hustedt is trying to convince me she has no concrete injury, while the defendant insists Hustedt has indeed been injured by its conduct. It's a bit topsy-turvy. How we got here starts with the Supreme Court's standing jurisprudence, which is where I'll begin.

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which the Supreme Court has interpreted to require, among other things, a plaintiff with "standing" to assert her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). When a case is removed to federal court, the removing defendant has the burden "to establish that all elements of jurisdiction – including Article III standing – existed at the time of removal." *Collier v. SP Plus Corporation*, 889 F.3d 894, 896 (7th Cir. 2018). Hustedt invokes the standing concept along with the requirement of 28 U.S.C. §1447(c)): "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

2

remanded." [DE 30 at 6.] Because "[f]ederal courts have subject-matter jurisdiction only if constitutional standing requirements also are satisfied," Hustedt contends that if HW concedes or fails to demonstrate Article III standing, her case should be remanded to state court. *Collier*, 889 F.3d at 896.

One of the elements of standing is an "injury in fact," which means "an invasion of a legally protected interest which is (a) concrete and particularized...and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted).[3] Hustedt's argument for remand is based on two recent Supreme Court cases that addressed the concrete injury requirement in the Fair Credit Reporting Act context. Hustedt argues that under these decisions, and lower court cases interpreting them, HW cannot identify within the Second Amended Complaint allegations of an injury in fact sufficient to support Article III standing. "The injury analysis often occurs at the pleading stage, where we are limited to the complaint's 'general factual allegations of injury resulting from the defendant's conduct' to evaluate standing." *Wadworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021), quoting *Lujan*, 504 U.S. at 661.

"The 'irreducible constitutional minimum of standing' requires the plaintiff or party invoking federal jurisdiction to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial

---

[3] The other two elements are "that the injury was likely caused by the defendant," and "that the injury would likely be redressed by judicial relief." *Lujan*, 504 U.S. at 560-61. These elements are not the subject of the standing dispute in this case.

3

opinion." *Pennell v. Global Rust Management, LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021), quoting *Lujan*, 504 U.S. at 560-61. The requirement of a concrete and actual injury is not necessarily met by the allegation of a statutory violation. Instead, "a bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement because "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 342 (2016). *See also Pennell*, 990 F.3d at 1044. "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Id*. As the Supreme Court noted in *Spokeo* "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such as where the statutory violation creates "risk of real harm." *Spokeo*, 578 U.S. at 342. Because the Ninth Circuit's analysis had focused on particularity to the exclusion of the concreteness requirement, the Supreme Court remanded the case for a determination "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement" to adequately allege an injury in fact. *Id*. at 343. On remand in *Spokeo II*, the Ninth Circuit found such a risk. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 118 (9th Cir. 2017).

The other Supreme Court decision chiefly relied upon by Hustedt is *TransUnion v. Ramirez*, ___ U.S. ___, 141 S.Ct. 2190 (2021), a class action. There, on the one hand, the Court held that class-members whose allegedly inaccurate credit reports had been provided to third-party businesses "demonstrated concrete reputational harm and thus

4

have Article III standing to sue." *Id*. at 2200. But on the other hand, the plaintiffs whose credit reports had not been provided to third-party businesses during the relevant time period had "not demonstrated concrete harm and thus lack Article III standing to sue." *Id*.

The exact meaning of these cases has been hotly debated in the Seventh Circuit and around the country. Unlike some other circuits, the Seventh Circuit has taken a very restrictive view on the standing requirement in FCRA and FDCPA cases, dismissing many cases over the past couple years on standing grounds. *Pennell v. Global Trust Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. ThrasherBuschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). But some judges in the Seventh Circuit have disagreed with the crabbed reading of the standing requirement in FDCPA and FCRA cases. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 and 785 (7th Cir. 2021) (Ripple J. and Rover J, concurring). *See also Thornley v. Clearview AI, Inc.,* 984 F.3d 1241, 1251 (7th Cir. 2021)(Hamilton J., concurring).

As alluded to above, the situation before me involves a strange procedural posture in which the plaintiff invokes the defendant's burden to show that she has

5

alleged a concrete injury-in-fact, when she says she has not (so as to avoid an unwanted removal to federal court). Ordinarily defendants challenge the existence of jurisdiction and plaintiffs defend their standing to bring suit. But this reversal of roles is inherent in the removal context, and the Seventh Circuit has rejected a defendant's contention "that once removal based on a federal question gets a defendant's foot in the door of a federal court, the slate is wiped clean and the defendant can challenge jurisdiction." *Collier*, 889 F.3d at 896. For this reason, HW correctly concedes that it bears the burden of demonstrating the existence of federal jurisdiction. [DE 33 at 7.]

Hustedt's basic point is that her amended complaint contains no allegation of concrete harm and thus Article III standing is lacking. [DE 30 at 2, 5; DE 36 at 10.] But this leaves me to wonder how, in the absence of any such injury, Hustedt will be able to demonstrate to a state court an entitlement to the damages she seeks in her complaint. (No injunctive relief is prayed for, and the complaint makes no reference to statutory damages.) I am also left to wonder how Hustedt's complaint would fare in the face of a standing challenge under state law. Although, of course, Article III of the U.S. Constitution does not govern the state courts, Indiana also has a doctrine of standing, limiting the jurisdiction of its courts to matters brought by a party who can "show adequate injury or the immediate danger of sustaining some injury." *Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995), quoted in *Horner v. Curry*, 126 N.E.3d 584, 589 (Ind. 2019). As the Indiana Supreme Court explains, "[b]y requiring a party to show a specific injury, the doctrine limits the judiciary to resolving concrete disputes between private

6

litigants while leaving questions of public policy to the legislature and the executive." *Horner*, 125 N.E.3d at 589. In any event, because I am remanding this case for the reasons stated below, these are questions the state court will have to grapple with.

Returning to the present motion, what does HW say in response to Hustedt? First, HW points out that Hustedt removed injury allegations from the original complaint, suggesting that Hustedt has engaged in strategic game-playing. [DE 33 at 1-2.] The standing question necessarily turns on what and how the plaintiff has chosen to plead the complaint. "When courts analyze standing, 'allegations matter.'... What matters here, then, is what [plaintiff] alleged in her operative complaint." *Pennell*, 990 F.3d at 1045, quoting *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021).

At the time of removal, the First Amended Complaint governed, and under that version of the complaint, standing was fairly clear. As noted by HW in its opposition to remand [DE 33 at 2], Hustedt alleged in that version of the complaint that "[e]ach time the CRA Defendants issued a report concerning Ms. Hustedt, such report included the inaccurate HW tradeline." [DE 5 at 6, ¶71.] The problem is that this allegation is absent from the Second Amended Complaint. According to Hustedt, this change in the complaint was made "to remove inadvertently included mention of 'CRA Defendants,' which were never sued and inadvertently not removed from a draft." [DE 30 at 2.] ("CRA Defendants" apparently refers to credit reporting agencies, none of which is named as a defendant in any of Hustedt's three complaints.) HW also asserts that "Plaintiff's counsel has certified...[in] both the Original and First Amended Complaints,

7

that his client 'was harmed', that she suffered 'actual damages', emotional distress, incurred costs and HWI's conduct 'caused damages.'" [DE 33 at 3.] But HW makes this assertion without citation to either of those pleadings. [*Id*.]

HW's frustration with Hustedt's pleadings is apparent in its suggestion that "the ever changing nature of the allegations...give[s] substantial basis for further discovery on these issues." [DE 33 at 5.] HW cites no authority for the notion that it could shore up its demonstration of standing by means of discovery, instead of making the necessary showing based on the pleadings. To the contrary, Hustedt cites the Seventh Circuit's holding that standing must be established at the time the court's jurisdiction is invoked, and cannot be "manufacture[d]" afterwards. *Pennell*, 990 F.3d at 1044; *Pollack v. U.S. Dep't of Justice*, 577 F.3d 736, 742 n.2 (7th Cir. 2009). Where "a case is at the pleading stage, the plaintiff must 'clearly...allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338, quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). This is true of each subsequent pleading given that "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion*, 141 S.Ct. at 2208.

Later and more helpfully, HW turns its focus to the Second Amended Complaint, and contends that various specific allegations in it establish concrete injury-in-fact that supports Article III standing. These are:

- that HW violated §1692e(8) of the FDCPA by reporting inaccurate debt information on Hustedt, citing ¶¶72-74 of the SAC;

8

- relatedly, that HW "furnished inaccurate information to Trans Union and Equifax after having documentation showing the information was inaccurate," citing ¶65 of the SAC;

- and finally that HW both "failed to notify the consumer reporting agencies that the information furnished was inaccurate" and "failed to notify the consumer reporting agencies that information was incorrectly reflected by the CRA," citing ¶¶66-67 of the SAC.

[DE 33 at 7-8, 9.] HW cites the Seventh Circuit's decision in *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) in support of the conclusion that these allegations of a violation of ¶1692e(8) constitute an allegation of an injury sufficient to support Article III standing. [DE 33 at 8-9.]

Section 1692e(8) prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." In *Evans*, the Seventh Circuit held that the plaintiffs, who "pointed to the risk of financial harm as a result of credit reporting agencies lowering their credit score" had Article III standing for a claim under §1692e(8). *Evans*, 889 F.3d at 345-46. A district judge in this Circuit has questioned whether that portion of *Evans* survived the Supreme Court's decision in *TransUnion*, 141 S.Ct. at 2210-11, which cast doubt on whether "a risk of harm is enough to show an injury in fact in a suit...that doesn't seek injunctive relief." *Tolliver v. National Credit Systems, Inc.*, No. 20-cv-728-jdp, 2021 WL 4306056, at *2 (W.D.Wis. Sep. 22, 2021).

9

The Seventh Circuit's own interpretation of *Evans* shows its limits. In *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 786 (7th Cir. 2021), Judge Rovner remarked in her concurrence that "the *Evans* court made clear that it is not enough that the statutory violation presented a risk of harm – the plaintiff has to explicitly allege a risk of concrete harm." In *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019), the court noted that the availability of a cause of action under the FDCPA does not automatically confer standing on a plaintiff alleging a failure to comply with an FDCPA requirement. The judge in *Tolliver* surveyed district court decisions and found that "[d]istrict courts applying *Evans* have likewise required the plaintiff to show some change in the plaintiff's status beyond the bare violation of the law." *Tolliver*, 2021 WL 4306056, at * 3 (collecting cases).

Whether or not *Evans* is impacted by *Ramirez*, the application of *Evans* to Hustedt's case would not support a finding of Article III standing. In *Evans*, the plaintiffs alleged that the debt collector defendant communicated debts to credit reporting agencies without reporting that the debts were disputed, resulting in a risk of a lower and inaccurate credit rating. *Evans*, 889 F.3d at 343, 345. By contrast, Hustedt does not allege this, and in fact acknowledges that Hunter Warfield *did* show the debt as disputed and that the report would therefore not impact her credit score. [DE 36 at 8.] Hustedt does not allege that the credit reporting agencies to which HW gave the disputed debt information then lowered her credit score as a result.

The portions of Hustedt's pleading cited by HW allege that HW reported inaccurate debt information to credit reporting agencies, but nothing beyond that – not that those agencies had provided inaccurate credit reports or scores on Hustedt to any third-parties, or that Hustedt had otherwise been concretely and negatively impacted by HW's sharing of erroneous information. Compare this with Judge Hanlon's very recent decision concluding that a plaintiff had standing under the FCRA based on his allegation that inaccurate credit reports and a lowered credit score *received by third-parties* put him at risk of higher interest rates on loans. *Woessner v. Midland Funding LLC*, No. 1:21-cv-02149-JPH-MG, 2021 WL 6000514, at *1 (S.D.Ind. Dec. 20, 2021).

The Seventh Circuit's analysis in *Evans* focuses not on the nature of the statutory violation alleged, but on how the plaintiff has pleaded her resulting injury. That is how the *Evans* court distinguished *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), a case under the Cable Communication Policy Act, where the risk of harm from the statutory violation was likely, but wasn't pleaded. *Evans*, 889 F.3d at 345-46. In other words, Gubala's pleadings had not articulated his fears of actual financial harm, whereas the *Evans* plaintiffs "explicitly alleged a risk of concrete harm" by "point[ing] to the risk of financial harm as a result of credit reporting agencies lowering their credit score." *Id.* at 346.

At oral argument, HW relied heavily on the Seventh Circuit's recent decision in *Persinger v. Southwest Credit Systems, L.P.*, 2021 WL 6058148, No. 21-1037 (7th Cir. Dec. 22, 2021), a case not yet decided at the time HW filed its memorandum in opposition.

11

HW argues that *Persinger* stands for the idea that allegations that are akin to a common law tort cause of action create standing. But *Persinger* actually underscores that the standing inquiry first focuses on the plaintiff's allegations about the harm she has suffered, not the nature of the alleged legal claim: "When reviewing potential injuries for standing purposes, we are constrained by the operative complaint." *Persinger*, 2021 WL 6058148, at *3. In that case, the complaint "alleged 'financial and dignitary harm…and an injury to [plaintiff's] credit rating and reputation.'" *Id*. *Persinger* is immediately distinguishable because such allegations are clearly absent here. After admissions in Persinger's deposition, the Seventh Circuit was left with "dignitary harm as the only allegation in Persinger's complaint that might qualify as a concrete injury." *Id*. Note again that the analysis is limited to the harms alleged in the plaintiff's complaint.

*Persinger* goes on to conduct a careful analysis concluding that invasion of privacy constitutes a "concrete injury because it is analogous to the common law tort of intrusion upon seclusion." *Id*. at *5. But that is no help to HW's position in this case. The *Persinger* opinion starts by identifying what if any harms were alleged in the operative complaint. Admittedly, because that case was at the summary judgment stage, the plaintiff's burden was more developed than in our case, and the court could consider whether her proof supported the existence of a concrete injury-in-fact. *See TransUnion*, 141 S.Ct. at 2208 ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive states of the litigation.'" Quoting

12

*Lujan*, 504 U.S. at 561.) Even so, the Seventh Circuit noted that "the only eligible harm for standing purposes" is "one that is both grounded in the complaint and uncontradicted by the record." *Id*. at *3. By contrast, our case is only at the pleading stage. And although the operative complaint alleges various types of statutory violation which may (or may not) give rise to concrete injuries in a given case, no such concrete injuries are alleged by Hustedt in the operative complaint here.

HW has failed to demonstrate how the operative complaint alleges a concrete injury in fact so as to establish Hustedt's standing to bring the action. In *Collier*, in which the defendants were in the same frustrating position of having to defend their removal of the case by establishing the plaintiffs' standing, the Seventh Circuit held that because the complaint "did not sufficiently allege an actual injury" then "§1447(c) required the district court to remand this case to state court." *Collier*, 889 F.3d at 896, 897. The unhappy defendants in that case argued that the plaintiffs should be ordered to amend their complaint to support their conclusory prayer for damages, but the court dusted that aside noting that there was "no basis to order these plaintiffs how to plead their case in state court after remand." *Id*. at 897. But the Seventh Circuit did note that if, after remand, the complaint were amended to state an injury in fact, or the defendant received any paper that demonstrated the predicates for removal, "§1446(b)(3) would permit [the defendant] to then remove the case to federal court" a second time. *Id*. The same is true here.

13

Because Hustedt expressly pleads federal questions and has only avoided pleading Article III standing by performing plastic surgery on her complaint, I share HW's frustration at the outcome I believe is required by the Seventh Circuit, but perhaps not other circuits. *See Markakos*, 997 F.3d at 787 (Rovner, J., concurring). Hustedt has scrubbed all references to her damages from her pleading. Whether that effort will fly in state court, I do not know. But if Hustedt is compelled in state court to amend her complaint to again make her injury allegations plain, that will likely trigger another trip to federal court. All of which causes me to agree with the *Collier* court's expression of lament at the "dubious strategy [that] has resulted in a significant waste of federal judicial resources." *Id*. at 897.

**ACCORDINGLY:**

Plaintiff Alexandra Hustedt's Amended Motion to Remand for Lack of Article III Jurisdiction [DE 29] is GRANTED.

This action is remanded to the Circuit Court of Tippecanoe County.

**SO ORDERED**.

ENTERED: January 24, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

14